UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------x

OKLAHOMA LAW ENFORCEMENT : Case No. 1:18-cv-03021-JMF
RETIREMENT SYSTEM et al., Individually :
and on Behalf of All Others Similarly Situated, : CLASS ACTION
:
Plaintiff, : [PROPOSED] FINDINGS OF FACT AND
: CONCLUSIONS OF LAW PURSUANT TO
vs. : 15 U.S.C. §78u-4(c)(1)
:
TELEFONAKTIEBOLAGET LM ERICSSON :
et al., :
:
Defendants. :
:
---------------------------------------x

~~In accordance with the Court's February 12, 2020 Order (ECF No. 65), Lead Plaintiff Oklahoma Law Enforcement Retirement System ("OLERS" or "Lead Plaintiff") and plaintiff Greater Pennsylvania Carpenters' Pension Fund ("Plaintiff," and together with Lead Plaintiff, "Plaintiffs"), respectfully submit these [Proposed] Findings of Fact and Conclusions of Law pursuant to 15 U.S.C. §78u-4(c)(1). Accompanying this submission is the Affidavit of Greg Regan, a forensic accountant retained by Plaintiffs' counsel as a consultant. Mr. Regan's Affidavit is incorporated by reference and supports the proposed findings of fact and conclusions of law below.~~

## I. ~~[PROPOSED]~~ FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. Governing Law

1. Under the Securities and Exchange Act of 1934, as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), the Court must, "[u]pon final adjudication of the action, . . . include in the record specific findings regarding compliance by each party and each attorney representing any party with each requirement of Rule 11(b) of the Federal Rules of Civil Procedure as to any complaint, responsive pleading, or dispositive motion." 15 U.S.C. §78u-4(c)(1).

2. Under Rule 11(b), an attorney who presents a "pleading, written motion, or other paper" to the Court certifies that, "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances":

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

3. Rule 11 "is targeted at situations 'where it is patently clear that a claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands.'" *Sid Bernstein Presents, LLC v. Apple Corps Ltd.*, No. 16 Civ. 7084 (GBD), 2017 WL 4640149, at *8 (S.D.N.Y. July 26, 2017) (quoting *Stern v. Leucadia Nat'l Corp.*, 844 F.2d 997, 1005 (2d Cir. 1988), and rejecting defendants' request for sanctions).[1] The Second Circuit has "stressed that 'any and all doubts must be resolved in favor of the signer.'" *Id.* (quoting *Stern*, 844 F.2d at 1005).

4. An argument constitutes a "frivolous legal position" for Rule 11 purposes if, "'under an objective standard of reasonableness, it is clear . . . that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands.'" *Id.* (quoting *Morley v. Ciba-Geigy Corp.*, 66 F.3d 21, 25 (2d Cir. 1995); ellipses in original). Even if a legal theory is a "'long-shot,'" that "'does not necessarily mean it is sanctionable.'" *Id.* (quoting *Fishoff v. Coty Inc.*, 634 F.3d 647, 654 (2d Cir. 2011)). "That Plaintiff's claims failed to pass the motion-to-dismiss threshold does not mean that they clearly had no chance of success and that there was no reasonable argument to extend the law as it stood at the time of filing." *Id.* Thus, in *In re Merrill Lynch Tyco Research Securities Litigation*, No. 03 CV 4080(MP), 2004 WL 305809, at *5 (S.D.N.Y. Feb. 18, 2004), the court concluded: "Although the Court finds, for the reasons set forth above, that Plaintiff's allegations of loss causation are insufficient, this does not mean that Plaintiff's claim is so unreasonable that it had absolutely 'no chance' of success."

5. Applying these legal standards to the findings of fact below, as discussed in more detail *infra*, the Court concludes that all legal claims and defenses presented in this lawsuit were non-frivolous under existing law, and that all factual contentions had evidentiary support or were

---

[1] Unless otherwise indicated, some or all internal quotation marks are omitted from quoted material, and emphasis is added.

reasonably based on belief or a lack of information. *See, e.g., In re China Organic Sec. Litig.*, No. 11 Civ. 8623 (JMF), 2013 WL 5434637, at *12 (S.D.N.Y. Sept. 30, 2013) (Furman, J.). Accordingly, the Court finds that all parties and their attorneys have complied with the requirements of Rule 11.

B. [Proposed] Findings of Fact

1. Procedural History of the Litigation

6. On April 5, 2018, Bristol County Retirement System ("Bristol County"), on behalf of itself and all others who purchased or otherwise acquired the American Depositary Shares ("ADS") of Telefonaktiebolaget LM Ericsson ("Ericsson" or "Company") between April 8, 2013 and July 17, 2017, inclusive ("Class Period"), filed a putative class action complaint in this Court ("Initial Complaint"; ECF No. 1), alleging violations of Sections 10(b) and 20(a) of the Exchange Act of 1934 ("Exchange Act").

7. The Initial Complaint named Ericsson and the following executives of the Company as defendants (all of whom are collectively referred to herein, together with Ericsson, as "Defendants"): Hans Vestberg, President and Chief Executive Officer ("CEO") before July 25, 2016; Jan Frykhammar, Chief Financial Officer ("CFO") before July 25, 2016, acting CEO between July 25, 2016 and January 15, 2017, and Executive Vice President ("EVP") until November 7, 2017; Börje E. Ekholm, President and CEO after January 16, 2017; Carl Mellander, acting CFO from July 25, 2016 through March 31, 2017, and CFO after April 1, 2017; and Magnus Mandersson, EVP and head of the Global Services segment at all relevant times, and Advisor to the CEO from July 1, 2016 through November 7, 2017.

8. The law firm of Labaton Sucharow LLP ("Labaton") acted as counsel to Bristol County in investigating, preparing, and filing the Initial Complaint.

9. On July 24, 2018, the Court issued an Opinion and Order (ECF No. 33) appointing Oklahoma Law Enforcement Retirement System as lead plaintiff ("OLERS" or "Lead Plaintiff"), designating Robbins Geller Rudman & Dowd LLP as lead counsel ("Robbins Geller" or "Lead Counsel"), and establishing a schedule for the filing of a consolidated amended complaint ("AC"). On September 19, 2018, the Court granted Plaintiffs an extension of time to file the AC until October 22, 2018 (ECF No. 36).

10. In preparing the AC, Robbins Geller, together with Labaton (as additional counsel for Plaintiffs), conducted a factual investigation that included, among other things: (1) reviewing and analyzing Ericsson's filings with the U.S. Securities and Exchange Commission filings during the putative Class Period; (2) enlisting the services of in-house investigators at Robbins Geller and Labaton, who assisted counsel in identifying and contacting former employees of Ericsson (each, an "FE"), and confirming with the FEs the information they supplied during the course of the investigation; and (3) engaging the services of an outside consultant with expertise in forensic accounting, Greg Regan, who worked with attorneys and in-house forensic accountants at Robbins Geller and Labaton.

11. On October 22, 2018, Lead Counsel filed the AC with the Court on behalf of Plaintiffs, listing Labaton, which had assisted in the investigation, as additional counsel. *See* ECF Nos. 40 & 41. The AC, comprising 313 numbered paragraphs over 109 pages, was based on and relates the accounts of eight FEs (FE 1 through FE 8) whom Plaintiffs' counsel identified and interviewed in connection with this litigation. In the AC, Plaintiffs continued to allege claims under Sections 10(b) and 20(a) of the Exchange Act against all Defendants.

12. On December 21, 2018, Defendants—represented by the law firm of Paul, Weiss, Rifkind, Wharton & Garrison LLP ("Paul, Weiss")—filed a joint motion to dismiss the AC under Rules 9(b), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure (ECF No. 45).

13. On December 27, 2018, the Court issued an Order (ECF No. 48) establishing a briefing schedule on the motion, while at the same time affording Plaintiffs an opportunity to file a second amended complaint ("SAC") by January 11, 2019. On January 10, 2019, the Court granted Plaintiffs an extension of time to file the SAC until January 25, 2019 (ECF No. 51), and extended the briefing schedule on any motion to dismiss accordingly.

14. On January 25, 2019, Plaintiffs, represented by Robbins Geller, filed the SAC (ECF No. 52). Labaton, which had continued to assist in the investigation, was listed as additional counsel. The SAC, comprising 318 numbered paragraphs over 110 pages, was based on and describes the accounts of nine former employees of Ericsson (FE 1 through FE 9) identified by Plaintiffs' counsel and interviewed in connection with the litigation. In the SAC, Plaintiffs continued to allege claims under Sections 10(b) and 20(a) of the Exchange Act against all Defendants, as discussed in more detail in the following section. The SAC also generally bolstered the allegations of the AC, basing certain additional allegations on FE 9's account, and including additional factual allegations establishing personal jurisdiction over defendant Mandersson.

15. On March 26, 2019, Defendants filed a joint motion to dismiss the SAC under Rules 9(b), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure (ECF No. 53). In their moving brief (ECF No. 54), Defendants argued, among other things, that: (1) the Section 10(b) claim was subject to dismissal because the SAC purportedly failed to allege misstatements, scienter, or loss causation with the requisite particularity; (2) the Section 20(a) claim was subject to dismissal because the SAC purportedly failed to allege a primary violation of the federal securities laws and

Defendants' culpable participation in the alleged fraud; and (3) the Court lacked personal jurisdiction over defendant Mandersson.

16. On May 28, 2019, Plaintiffs filed their memorandum of law opposing the motion to dismiss (ECF No. 57), together with a supporting declaration from Joseph Russello (ECF No. 58), the Robbins Geller partner with day-to-day responsibility for supervising the litigation. In their opposition brief, Plaintiffs responded to the substantive arguments raised in the motion to dismiss and cited additional facts, described in the declaration and obtained from documents filed as exhibits therewith, concerning the existence of personal jurisdiction over Mandersson.

17. On June 27, 2019, Defendants filed a reply memorandum of law in further support of their motion to dismiss (ECF No. 60).

18. On January 10, 2020, the Court issued an Opinion and Order (ECF No. 61), described in more detail in the following section, granting the motion to dismiss and giving Plaintiffs leave to amend the SAC within 30 days.

19. After an attempt to resume the investigation to uncover additional information that might address the concerns expressed by the Court in its Opinion and Order, Lead Counsel concluded that no new information warranted amendment of the SAC. Accordingly, on February 10, 2020, Joseph Russello sent a letter to the Court thanking it for the opportunity to amend, and advising the Court that, after due consideration, Plaintiffs had decided not to amend the SAC (ECF No. 64).

20. Earlier that same day, Mr. Russello called Daniel Kramer, a partner at Paul, Weiss who represents Defendants, to advise him, as a courtesy, that Plaintiffs had elected not to amend the SAC and did not intend to appeal. During the call, Mr. Russello separately suggested that the parties

should bear all costs and fees associated with the case, and inquired whether Defendants would agree. In an email later that day, Mr. Kramer confirmed that Defendants agreed.

21. In the wake of Mr. Russello's letter, the Court issued an Order on February 12, 2020, dismissing this action with prejudice (ECF No. 65). Because that dismissal constituted a final adjudication of the action, the Court directed Plaintiffs to file "proposed findings of fact and conclusions of law for the Court's consideration pursuant to 15 U.S.C. § 78u-4(c)(1) . . . ." *Id.*

### 2. Findings of Fact Regarding the SAC

22. In its Opinion and Order dismissing the SAC, the Court described the four business and accounting practices alleged by Plaintiffs as the bases for their claims against Defendants in both the AC and SAC. *See generally* ECF No. 61 at 2-4. In sum, those four practices involved: (1) the use of "loss-leading contracts," which are contracts that "'Ericsson entered into with the understanding that they were going to lose money,' but undertook anyway 'to gain market share'" (*id.* at 2 (quoting ¶137));[2] (2) the use of underestimated or "under-scoped" costs in bids for long-term service contracts (*id.* at 2-3 (citing, *inter alia*, ¶¶9-11)); (3) the delayed recognition of project costs by "pushing" them into later financial quarters (*id.* at 3 (citing, *inter alia*, ¶13)); and (4) the premature recognition of revenue (*id.* at 3-4 (citing, *inter alia*, ¶155)).

23. Alleging that Ericsson regularly reported its financial results without disclosing these four practices (*see id.* at 4), Plaintiffs attempted to plead claims relating to Ericsson's loss-leading and under-scoped contracts (*see generally id.* at 8-11), and claims related to Ericsson's revenue and cost-recognition practices (*see generally id.* at 11-14). Plaintiffs also alleged a variety of other related misstatements and omissions. *See generally id.* at 14-20.

---

[2] Unless otherwise indicated, all citations to "¶" and "¶¶" refer to paragraphs in the SAC.

24. In the Opinion and Order, the Court set out the applicable heightened pleading standards imposed by Rule 9(b) and the PSLRA (*see id.* at 6-7), as well as the elements of a claim under Sections 10(b) and 20(a). *See id.* at 7. It is well recognized that these standards and requirements impose a heavy burden on plaintiffs trying to meet them. *See, e.g.*, *Ontario Teachers' Pension Plan Bd. v. Teva Pharm. Indus. Ltd.*, No. 3:17-cv-558 (SRU), 2019 WL 4674839, at *10 (D. Conn. Sept. 25, 2019) ("Rule 9(b) and the PSLRA place heavy requirements on plaintiffs who bring fraud allegations"); *In re Gentiva Sec. Litig.*, 2 F. Supp. 3d 384, 388 (E.D.N.Y. 2014) ("Although broad in scope, § 10(b) imposes a heavy burden on a plaintiff . . . .") (citing *Herman & MacLean v. Huddleston*, 459 U.S. 375, 382 (1983)).

25. Evaluating Plaintiffs' allegations in the context of these heightened standards and requirements, the Court dismissed the claims asserted in the SAC without prejudice. As described in more detail in the Opinion and Order, the Court dismissed those claims for the following reasons: insufficient allegations of falsity (*see* ECF No. 61 at 8-9, 12, 17-19), and insufficient allegations of scienter (*see id.* at 10-11, 12-14). In addition, the Court concluded that certain misstatements alleged by Plaintiffs: (1) constituted puffery or corporate optimism (*see id.* at 14-15); (2) were protected by the PSLRA's safe harbor for forward-looking statements and the judicial "bespeaks caution" doctrine (*see id.* at 15-16); (3) constituted non-actionable opinion (*see id.* at 16-17); or (4) related to internal company policies as to which no disclosure was required (*see id.* at 19-20).

26. Although the Court dismissed Plaintiffs' claims, the Court finds that the arguments advanced and positions taken in Plaintiffs' submissions in opposition to the dismissal motion were in good faith and not unreasonable or frivolous. Having granted Defendants' motion, the Court also finds that the arguments advanced and positions taken in Defendants' submissions in support of the dismissal motion were in good faith and not unreasonable or frivolous.

27.     The Court also finds, as a matter of fact, that Plaintiffs undertook sufficient efforts to investigate and develop factual and other support for their claims. For example, Plaintiffs' counsel have apprised the Court that:

(a)     Robbins Geller and Labaton utilized multiple investigators to investigate the factual predicate for the claims alleged. Both Robbins Geller and Labaton engaged the services of several in-house investigators to identify potential witnesses, including the FEs; the investigators, under the supervision and direction of counsel, contacted numerous potential witnesses through various means and confirmed, to the best of their ability, the accuracy of the information received; and the investigators continued to attempt to develop further witnesses and information as this case progressed, including for the purpose of evaluating whether to further amend the allegations and claims after the Court's dismissal of the SAC.

(b)     As the investigation progressed, and before filing the AC and SAC, Robbins Geller, with Labaton's assistance, engaged in reasonable efforts to verify and confirm the information alleged therein. Robbins Geller modified particular allegations in drafts of the AC and SAC where necessary to ensure the final product accurately reflected the factual accounts provided by the FEs and derived from other sources.

(c)     In investigating the claims alleged and developing the theories of this case, Robbins Geller, with Labaton's assistance, endeavored to identify and contact former employees of Ericsson who worked for different divisions of Ericsson at different times and covering different geographic regions. Plaintiffs' counsel undertook these efforts in a good-faith attempt to establish that the information alleged in the AC and SAC was not confined to a single aspect of Ericsson's business and operations, but rather extended to a sufficiently large cross-section of the Company to support an inference that the alleged misconduct was widespread, and therefore ostensibly reached

the highest levels of the Company, or could not have occurred without the knowledge or awareness of the Company's senior executives.

(d)     Because this case includes accounting-related allegations, Robbins Geller and Labaton utilized the services of their in-house forensic accountants to identify potentially relevant accounting principles and concepts and develop the accounting-based claims. They also engaged the services of a forensic-accounting consultant, Greg Regan, to provide input and guidance regarding the accounting-based allegations on a non-contingent basis. As Mr. Regan attests in his Affidavit, he evaluated and assisted in developing the accounting-related allegations included in the AC (which allegations were later incorporated into the SAC), and believes those allegations were reasonable, and that the theory of liability was sound and sufficiently supported, from an accounting point of view.

28.     Additionally, in preparing the AC, the SAC, and Plaintiffs' memorandum of law in opposition to Defendants' motion to dismiss, Robbins Geller evaluated and developed facts that, in its opinion, were relevant to establishing personal jurisdiction over Mandersson. While Robbins Geller believed the facts alleged in the AC and SAC were sufficient to establish personal jurisdiction over Mandersson, it identified further, relevant factual information in preparing the opposition.

29.     Accordingly, the Court finds, based on the facts set forth above, that all parties and their counsel had a reasonable and good-faith basis to assert their respective arguments and positions during this litigation.

C.      [Proposed] Conclusions of Law

30.     As discussed above, the Court must, under 15 U.S.C. §78u-4(c)(1), make "specific findings regarding compliance by each party and each attorney representing any party with each requirement of Rule 11(b)." Each subsection of Rule 11(b) is discussed below:

### 1. Fed. R. Civ. P. 11(b)(1)

31. Under Rule 11(b)(1), when the attorneys for the parties submitted pleadings, written motions, and other papers to the Court in this action, they certified that those submissions were not "presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation . . . ."

32. Based upon the record before the Court and the findings of fact above, the Court finds that no attorney representing any party to this litigation, nor any party to the action, has presented any pleading, written motion, or other paper for any improper purpose, whether to harass, cause unnecessary delay, or needlessly increase the cost of the litigation. This finding includes, *inter alia*, Plaintiffs' filing of the AC and the SAC, Defendants' submission of their joint motions to dismiss, and the parties' briefing of such motions. The Court therefore finds that the parties and each of their attorneys complied with the requirements of Rule 11(b)(1).

### 2. Fed. R. Civ. P. 11(b)(2)

33. Under Rule 11(b)(2), when the attorneys for the parties submitted pleadings, written motions, and other papers to the Court in this action, they certified that their "claims, defenses, and other legal contentions [were] warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law . . . ."

34. The Court granted Defendants' joint motion to dismiss the SAC because it concluded that Defendants and their attorneys had asserted meritorious arguments in support of dismissal. Accordingly, the Court finds that Defendants and each of their attorneys complied with Rule 11(b)(2).

35. Although the Court concluded that the SAC failed adequately to plead the elements of falsity and scienter, and therefore did not allege an actionable claim for violation of Section 10(b) and Rule 10b-5, Plaintiffs and their counsel at Robbins Geller and Labaton asserted claims and legal

contentions warranted by existing law.  Accordingly, the Court finds that Plaintiffs and each of their attorneys complied with Rule 11(b)(2).

### 3. Fed. R. Civ. P. 11(b)(3)

36. Under Rule 11(b)(3), when Plaintiffs' attorneys submitted the AC and SAC to the Court, they certified that their "factual contentions [had] evidentiary support or, if specifically so identified, [would] likely have evidentiary support after a reasonable opportunity for further investigation or discovery."

37. Based upon the record before the Court and the findings of fact above, the Court finds that Plaintiffs and their attorneys engaged in reasonable and adequate efforts to investigate, verify, and confirm the factual allegations in the AC and SAC.  In addition, Plaintiffs and their attorneys engaged in reasonable and adequate efforts to develop facts to support the accounting-based claims alleged in the AC and SAC.  On this record, the Court does not question that the factual contentions, though insufficient to state a claim, had evidentiary support, and likely would have had additional evidentiary support after a reasonable opportunity for discovery.  Thus, although the dismissal of this case required the Court to evaluate the factual allegations in the context of the legal standards that apply to the claims alleged, dismissal alone does not call into question the reasonable evidentiary basis for the facts alleged.

38. The Court therefore finds that Plaintiffs and each of their attorneys complied with the requirements of Rule 11(b)(3).

### 4. Fed. R. Civ. P. 11(b)(4)

39. Under Rule 11(b)(4), when Defendants' attorneys submitted their joint motions to dismiss the AC and SAC, they certified that any "denials of factual contentions [were] warranted on the evidence or, if specifically so identified, [were] reasonably based on belief or a lack of information."

40. In moving to dismiss the SAC, however, Defendants accepted the allegations of the SAC as true for purposes of the motion to dismiss, *see* ECF No. 54 at 3 n.2, as the law of this Circuit requires. *See Roth v. Jennings*, 489 F.3d 499, 510 (2d Cir. 2007). Therefore, the Court finds Rule 11(b)(4) inapplicable in the procedural context of this case.

## II. CONCLUSION

41. Based upon these findings of fact and conclusions of law, the Court has determined, and now holds, that all legal claims and defenses presented in this lawsuit were non-frivolous under existing law, and that all factual contentions had evidentiary support or were reasonably based on belief or a lack of information.

DATED: March ~~11~~ 13, 2020
      ~~ROBBINS GELLER RUDMAN~~
        ~~& DOWD LLP~~
      ~~SAMUEL H. RUDMAN~~
      ~~JOSEPH RUSSELLO~~
      ~~WILLIAM J. GEDDISH~~

      ~~/s/ Samuel H. Rudman~~
      ~~SAMUEL H. RUDMAN~~

~~58 South Service Road, Suite 200~~
~~Melville, NY 11747~~
~~Telephone: 631/367-7100~~
~~631/367-1173 (fax)~~
~~srudman@rgrdlaw.com~~
~~jrussello@rgrdlaw.com~~
~~wgeddish@rgrdlaw.com~~

*~~Lead Counsel for Plaintiffs~~*

SO ORDERED.

March 13, 2020